UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVAN QUINONES; ALEXANDRA LEGY, a Minor by and through her Guardian Ad Litem ROSA ALICIA CABRERA,<br><br>Plaintiffs,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, ZURICH NORTH AMERICA; ESIS, INC.; ESIS WOODLAND HILLS WC; DOES ADJUSTER(S) OTHER LEGAL HEIRS OF LIZZETH CABRERA, Deceased; and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No.: 18cv467-GPC(MDD)<br><br>**AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Dkt. No. 18.] |

Before the Court is Defendant Esis, Inc.'s motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 18.) Plaintiffs filed an opposition and Defendant filed a reply. (Dkt. Nos. 19, 20.) Based on the reasoning below, the Court GRANTS Defendant's motion to dismiss with leave to amend.

/ / / /

/ / / /

1

## Procedural Background

The case was removed from state court on March 2, 2018. (Dkt. No. 1.) Plaintiff Javan Quinones, son of decedent Lizzeth Cabrera, and Plaintiff Alexandra Legy, a minor daughter of decedent Lizzeth Cabrera, appearing by and through her guardian ad litem Rosa Alicia Cabrera (collectively "Plaintiffs") filed a complaint for wrongful death/negligence and willful misconduct against Defendants Zurich American Insurance Company ("ZAIC"); Zurich North America; Esis, Inc.; and Esis Woodland Hills WC. (Dkt. No. 1, Compl.) ZAIC and Esis, Inc. are the only defendants who have appeared in the case to date. On May 1, 2018, the Court granted Plaintiffs and ZAIC's joint motion to dismiss. (Dkt. Nos. 10, 12.) On May 18, 2018, Defendant Esis, Inc. filed a motion to dismiss arguing Plaintiffs' claims are barred by the exclusivity provision of the Workers' Compensation Act ("WCA") and California Labor Code ("Labor Code") section 4610.3(a). (Dkt. No. 18.)

## Factual Background

Around June 5, 2007, Decedent Lizzeth Cabrera ("decedent" or "Lizzeth") sustained physical injuries and disabilities from her work activity as a sorter with National Beef Packing Co., LLC. (Dkt. No. 1, Compl. ¶ 11.) She suffered injuries to her back, both shoulders and knee. (Id.) With legal counsel, Lizzeth filed a worker's compensation claim with the Worker's Compensation System and Appeals Board ("WCAB") in San Diego, CA. (Id. ¶ 12.) The matter was fully litigated within the WCAB. (Id.)

Lizzeth was diagnosed with major disc herniations, protrusions and bulges, foraminal stenosis and narrowing at multiple lumbar levels requiring surgeries. (Id. ¶ 13.) Around July 20, 2012, Lizzeth underwent a lumbar decompression and fusion of L3 through S1. (Id. ¶ 14.) Around November 6, 2013, she underwent anthroscopy and arthroscopic acromioplasty of the right shoulder in order to correct and alleviate her impingement syndrome. (Id. ¶ 15.)

Lizzeth's spinal condition did not improve, and over time she began having recurrent and persistent MRSA infections, abscesses and bed sores due to her continued and/or increased lack of mobility. (Id. ¶ 16.) This caused her great pain, stiffness and discomfort to her lumbar spine, radiating to her lower extremities, preventing her from becoming ambulatory. (Id.) She also fell approximately ten (10) times due to leg weakness. (Id.) Around April 8, 2016, Lizzeth's neurosurgeon requested authorization for surgery, hospitalization and treatment "including L2-3 interbody spinal fusion with an L2-S1 posterior spinal fusion and decompression, removal of previous hardware from L3-S1 and re-implantation of hardware at L2-S1; revision laminotomy and resection of bony hyperostosis at L3-S1; and exploration of fusions at L3-4." (Id. ¶ 17.) The Utilization Review "determination date" was April 15, 2016. (Id. ¶ 18.)

Around July 15, 2016, Defendants[1] notified Lizzeth's counsel that the requested medical treatment was certified and approved, including pre-operative diagnostics and treatment, hospitalization, spinal surgeries and aftercare and that "it met established criteria for medical necessity." (Id. ¶ 19.) Between July 15, 2016 and July 29, 2016, Defendants unilaterally cancelled the surgery scheduled for July 29, 2016 disputing the location of the surgery because they did not want to pay for transportation from Lizzeth's home in Brawley, CA to Los Angeles, the location of the surgery as it was not "within a reasonable geographic location." (Id. ¶¶ 20, 21.) Lizzeth's counsel agreed to cover the cost of the transportation to and from the surgery. (Id.) Around July 29, 2016, defense counsel wrote to Lizzeth's counsel confirming that she been certified for lumbar spine surgery, disputing that Los Angeles was "within a reasonable geographic location", not authorizing the surgery to be performed in Los Angeles and confirming the cancellation of the surgery. (Id. ¶ 21.) Around August 25, 2016, Lizzeth's counsel went to the WCAB and obtained a Stipulation and Order to schedule the surgery and a stipulation

---

[1] The Complaint references ZAIC and Esis collectively as "Defendants".

that "Defendant agrees to provide transportation for the Applicant from L.A. to her home in Brawley after the back surgery. Applicant to contact the transportation service (MTI) to make arrangements." (Id. ¶ 22.)

The surgery was scheduled for October 20, 2016. (Id. ¶ 23.) On or about October 17, 2016, Lizzeth passed away and the San Diego County Coroner stated the causes of death were respiratory failure, septic shock and polymicrobial sepsis. (Id. ¶ 24.)

Plaintiffs claim that between July 15, 2016 to August 25, 2016, Defendants negligently, carelessly, recklessly and unlawfully cancelled a certified and approved medical treatment over a non-existent payment of transportation issue causing Lizzeth's counsel to obtain an order reinstituting the surgery and transportation payment, causing a nearly three (3) month delay in the surgery, which would have saved Lizzeth's life, and as a result, directly and legally causing the injuries and damages to Plaintiffs. (Id. ¶ 26.)

### Discussion

**A.     Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

**B.     Exclusivity Provision of the Workers' Compensation Act**

Defendant moves to dismiss because Plaintiffs' claims are barred by the exclusive remedy provision of the WCA requiring Plaintiffs to pursue any relief before the WCAB. Because the gravamen of the complaint is the delay and refusal to pay compensation benefits, it falls within the exclusive province of the WCAB. Plaintiffs argue their claims fall within the exception to the exclusive remedy provision under the WCA because Defendant's acts of cancelling the surgery is not a "risk reasonably encompassed within the compensation bargain" and the exclusivity provision does not apply to Defendant, a third party/independent insurance adjuster.

California's Workers' Compensation Act provides for the compensation of employees injured in the course and scope of their employment. Cal. Lab. Code § 3201. Workers' compensation is the "sole and exclusive remedy of the employee or his or her dependents against the employer." Cal. Lab. Code § 3602. The WCA defines "employer" to include "insurer." Cal. Lab. Code § 3850(b). However, the exclusivity provision does

not apply to "any person other than the employer" who proximately caused the injury or death. Cal. Lab. Code § 3852.[2]

California courts follow a two-step analysis to determine whether an injury falls within the exclusivity provision. "The first step is to determine whether the injury is 'collateral to or derivative of' an injury compensable by the exclusive remedies of the WCA . . . ." Mosby v. Liberty Mutual Ins. Co., 110 Cal. App. 4th 995, 1003 (2003) (citing Vacanti, 24 Cal. 4th at 811). "If the injury meets that test, and is thus a candidate for the exclusivity rule, the second step is to determine whether the 'alleged acts or motives that establish the elements of the cause of action fall outside the risks encompassed within the compensation bargain.'" Id.

Plaintiffs dispute the second step arguing that ESIS's rescission of the surgery scheduled for July 29, 2016, even though her counsel agreed to pay for the transportation costs, is not a "risk reasonably encompassed within the compensation bargain." (Dkt. No. 19 at 11.)

Under the compensation bargain "the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund, 24 Cal. 4th 800, 811 (2001) (quoting Shoemaker v. Myers, 52 Cal. 3d 1, 16 (1990)). To determine whether the injury falls outside the "risk reasonably encompassed within the compensation bargain", courts look at whether the injury falls within a "narrow exception" to the WCA's exclusive jurisdiction as announced in Unruh v. Truck Ins. Exchange, 7 Cal. 3d 616 (1972). Id. at 819-20. "This exception focuses on the alleged acts or motives that establish the elements of the cause of

---

[2] "The claim of an employee, including, but not limited to, any peace officer or firefighter, for compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against any person other than the employer." Cal. Lab. Code § 3852.

action and considers whether these acts or motives constitute 'a risk reasonably encompassed within the compensation bargain.'" Id. "When determining whether the exception applies to a cause of action, courts first determine whether the alleged acts that give rise to that cause of action are "of the kind that [are] within the compensation bargain." Id. at 820.

In Unruh, the California Supreme Court recognized a narrow exception to the WCAB's exclusivity rule and held that the plaintiff could bring a civil action against the insurer for assault and intentional infliction of emotional distress and related punitive damages based on the tortious acts of Defendant insurer's agent. Unruh, 7 Cal. 3d at 630. In Unruh, the plaintiff injured her back while working with her employer, underwent four surgeries and her condition deteriorated. Id. at 620. The insurer hired Baker, an investigator, to assess her work-related injury. Id. at 621. Baker misrepresented his identity to the plaintiff, caused her to become emotionally involved with him, and induced her to cross rope and barrel bridges at Disneyland where another person secretly filmed her while Baker violently shook the bridges. Id. When the video was played at a hearing with the WCAB, the plaintiff suffered a physical and mental breakdown requiring hospitaliziation. Id.

The court allowed her claims to go forward for assault and intentional infliction of emotional distress against the insurer based on Baker's acts. Id. at 630. Recognizing that investigation of insurance claims is an important role of the insurer in a worker's compensation claim, id. at 627, the "deceitful course of conduct in its investigations which causes injury to the subject of the investigation" makes the insurer liable as "person other than the employer" within the meaning of section 3852 as it stepped out of its role as an insurer. Id. at 630-31. "Only when the entity commits tortious acts independent of its role as a provider of workers' compensation benefits may an employee maintain a private cause of action under Unruh." Marsh & McLennan, Inc. v. Superior Ct., 49 Cal. 3d 1, 10 (1989).

The California Supreme Court in Vacanti explained that insurer activity, such as payment of benefits and claims investigation that is intrinsic to the workers' compensation

claims process is a risk contemplated by the compensation bargain. Vacanti, 24 Cal. 4th at 821; see also Mitchell v. Scott Wetzel Services, Inc., 227 Cal. App. 3d 1474 (1991) (WCA holds exclusive jurisdiction over injured employee's allegations of insurer misrepresentations and perjury in connection with claims handling). Therefore, any denial or objection to claims for benefits, misconduct stemming from the delay, or "discontinuance of payments" are considered a normal part of the claims process and to be addressed by the WCAB. Vacanti, 24 Cal. 4th at 821. Similarly, "statutory and tort claims alleging that an insurer unreasonably avoided or delayed payment of benefits have been barred even though the insurer committed fraud and other misdeeds in the course of doing so." Id.

In Vacanti, the California Supreme Court held that the abuse of process and fraud claims alleging that the defendant insurer misused the claims process by "making frivolous objections, filing sham petitions and documents with the WCAB, issuing unnecessary subpoenas, and improperly threatening to depose plaintiffs' physicians" fell within the exclusivity provision as the alleged acts relate to normal insurer activity of processing and paying claims. 24 Cal. 4th at 823. It also went further holding that even regulatory crimes do not "violate the employee's expectations or go against the limits of the compensation bargain." Id. at 824 (allegations of crimes under Insurance Code sections 1871 and 1871.4 fall within exclusivity provision) (citing Up–Right, Inc. v. Van Erickson, 5 Cal. App. 4th 579, 582–584 (1992) (criminal violations of child labor laws do not support an exception to exclusivity). However, the court noted that intentional crimes against the employee by means of violence and coercion would fall outside the exclusion provision. Id.; see Mosby, 111 Cal. App. 4th at 999 (holding claims fell within the exception because the insurer stepped out of its role as an insurer and took on the role of "bad cop," explaining that a "malicious, false accusation of workers' compensation fraud against a claimant is not part of the normal workers' compensation claims process.").

In addition, in Vacanti, as to the Cartwright Act claim for restraint of trade, the court held that claim would fall under the exception to the exclusivity rule because the allegation

was not a normal part of the claims process as typically only an insurer and insured are involved in the claims process and a conspiracy to influence falls outside the exclusivity provision. Id. at 824. It also stated that RICO violations always fall under the exception. Id. at 826.

In this case, the question is whether the rescission of Lizzeth's surgery due to transportation costs, even though her counsel indicated he would pay for them, "falls outside of the risks encompassed within the compensation bargain." Plaintiffs' allegations concern Defendant's cancellation of a previously certified and approved surgery by Defendant due to transportation costs. According to the complaint, Defendant approved the medical treatment but would not authorize the surgery in Los Angeles because it was not "within a reasonable geographic location." (Dkt. No. 1, Compl. ¶¶ 19-21.) The reasons for Defendant's cancelling the surgery become questionable because Lizzeth's counsel agreed to pay for the transportation expenses. However, despite the tragic death of Lizzeth, the gravamen of Plaintiffs' causes of action for wrongful death and willful misconduct concern decisions relating to the form, location and timing of medical treatment that Lizzeth would receive. Based on California caselaw, the Court concludes that these decisions are ones that involve a "risk reasonably encompassed within the compensation bargain." See Vacanti, 24 Cal. 4th at 820-21; see Nelson v. American Casualty Co. of Reading Pa., No. CV 08-1943 SJO(Ex), 2008 WL 11338483, at *1, 3 (C.D. Cal. June 2, 2008) (claim that defendant insurer wrongfully delayed authorization to pay for liver transplant surgery causing death of the insured was barred by the exclusivity provision of the WCA). Thus, Plaintiffs' claims are barred as they fall within the exclusivity provision of the WCA.

Next, Plaintiffs argue that the exclusivity provision does not apply to an independent/third party adjuster and primarily cite to the dissent's reasoning in Marsh, 49 Cal. 3d at 8. However, their argument is foreclosed by the majority opinion in Marsh.

In Marsh, the plaintiff argued that an independent claims administrator is "any person other than the employer" under Labor Code section 3852 and therefore, her claims

fell outside the exclusive remedy provision of the WCA relying on the reasoning in <u>Dixon v. Claims Admin. Servs., Inc.</u>, 178 Cal. App. 3d 1184 (1986). The California Supreme Court in <u>Marsh</u> disagreed and rejected the holding in <u>Dixon</u> where the court of appeals held that a civil action may not be maintained against an independent claims administrators for refusal to pay compensation benefits as they are not considered "employers" as defined by the WCA but considered "any person[s] other than the employer." <u>Id.</u> at 10. In <u>Marsh</u>, the court rejected <u>Dixon</u>'s literal meaning of "employer" under sections 3850 and 3852 and held that claims against "independent insurance claims administrators and adjusters hired by their self-insured employers that unreasonably delay or refuse to pay compensation benefits" fall within the exclusive remedy provision of the WCA. <u>Id.</u>

Here, the complaint does not allege whether Esis is an insurance adjuster or a claims administrator. In opposition, Plaintiffs claim that Esis is an independent insurance adjuster while Defendant described itself as a claims administrator. Notwithstanding the absence of any allegation as to Esis's role, whether it was an insurance adjuster or claims administrator, its act of cancelling the surgery due to the costs of transportation falls within the exclusivity provision of the WCA. Accordingly, the Court GRANTS Defendant's motion to dismiss the complaint as barred by the exclusive remedy provision of the WCA.

**C.  California Labor Code section 4610.3(a)**

Defendant also argues that Plaintiffs' causes of action based on California Labor Code section 4610.3(a) fail because it does not apply to their claim. Plaintiffs assert they have sufficiently alleged a violation of Labor Code section 4610.3(a) because by implication, if she was scheduled for surgery on July 29, 2016, she would have already undergone "pre-operative diagnostics and treatment." Alternatively, if the Court disagrees, they seek leave of Court to amend the complaint to include additional facts that treatment had already begun when Defendant cancelled the surgery.

Section 4610.3(a) states that,

> an employer that authorizes medical treatment shall not rescind or modify that authorization after the medical treatment has been provided based on that authorization for any reason, including, but not limited to, the employer's subsequent determination that the physician who treated the

10

> employee was not eligible to treat that injured employee. If the authorized
> medical treatment consists of a series of treatments or services, the employer
> may rescind or modify the authorization only for the treatments or services
> that have not already been provided.

Cal. Lab. Code § 4610.3(a).

The complaint alleges that on April 8, 2016, Lizzeth's neurosurgeon requested authorization for surgery, hospitalization and treatment, and on July 15, 2016, Lizzeth was notified that the request was certified and approved. (Dkt. No. 1, Compl. ¶¶ 17, 19.) Between July 15, 2016 and July 29, 2016, Defendant unilaterally canceled the surgery set for July 29, 2016. (Id. ¶¶ 20-21.) The complaint does not allege that medical treatment was provided prior to Defendant's cancellation of the surgery. Therefore, Plaintiffs fail to state a claim under Labor Code section 4610.3(a), and the Court also GRANTS Defendant's motion to dismiss on this ground.

## D.    Leave to Amend

In the event the Court grants Defendant's motion to dismiss, Plaintiffs seek leave of court to amend the complaint to add a cause of action for intentional infliction of emotional distress and to add factual allegations that medical treatment was provided prior to Defendant's cancellation of the surgery in violation of Labor Code section 4610.3(a). Defendant objects.

As to whether there has been a violation of Labor Code section 4610.3(a), because Plaintiffs can cure the deficiencies in the complaint, Plaintiffs are granted leave to file a first amended complaint.[3] See De Soto, 957 F.2d at 658.

As to Plaintiffs' request to add a claim for intentional infliction of emotional distress, they fail to explain why leave to amend should be granted. In its reply, Defendant argues that Plaintiffs seek to include a cause of action for intentional infliction

---

[3] The parties have not addressed whether an independent cause of action under Labor Code section 4610.3(a) may be maintained despite the exclusivity provision of the WCA.

of emotional distress in order to allege extreme and outrageous conduct so that the exception to the exclusivity provision applies. But Defendant contends that motive is not relevant to the determination of exclusivity. Because Defendant has raised the issue, the Court addresses Plaintiffs' request.

Claims are barred under the exclusive remedy provision where the alleged acts are part of a normal workers' compensation claims process or where the motive behind the alleged acts does not violate a "fundamental policy of this state." Vacanti, 24 Cal. 4th at 812. While the parties raised the issue whether the alleged acts are part of the normal claims process, Plaintiff did not challenge Defendant's motion on whether the motive element violates a fundamental public policy. As explained in Vacanti, "any inquiry into an employer's motivation is undertaken not to determine whether the employer intentionally or knowingly injured the employee, but rather to ascertain whether the employer's conduct violated public policy and therefore fell outside the compensation bargain." Id. at 823 (quoting Fermino v. Fedco, Inc., 7 Cal. 4th 701, 714-15 (1994)). This exception to "quite limited." Id. (no exclusivity bar on claims for disability discrimination, wrongful termination in violation of public policy, and whistleblower claim). Because Plaintiffs could plausibly allege facts that the motive behind the alleged act is a violation of public policy, the Court GRANTS Plaintiffs leave to add a claim for intentional infliction of emotional distress. Accordingly, the Court GRANT Plaintiffs' request seeking leave amend the complaint.

## Conclusion

Based on the above, the Court GRANTS Defendant's motion to dismiss with leave to amend. Plaintiffs shall file a first amended complaint on or before **July 6, 2018**. The hearing date set for June 22, 2018 shall be **vacated**.

Dated: July 10, 2018

Hon. Gonzalo P. Curiel
United States District Judge