/

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| JAVAN QUINONES; ALEXANDRA LEGY, a Minor by and through her Guardian Ad Litem ROSA ALICIA CABRERA,<br><br>Plaintiffs,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, ZURICH NORTH AMERICA; ESIS, INC.; ESIS WOODLAND HILLS WC; DOES ADJUSTER(S) OTHER LEGAL HEIRS OF LIZZETH CABRERA, Deceased; and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No.: 18cv467-GPC(MDD)<br><br>**TENTATIVE ORDER GRANTING DEFENDANT ESIS, INC.'S MOTION TO DISMISS**<br><br>**[Dkt. No. 32.]** |
|---|---|

Before the Court is Defendant Esis, Inc.'s motion to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 32.) Plaintiffs filed an opposition and Defendant filed a reply. (Dkt. Nos. 34, 35.) Based on the reasoning below, the Court tentatively GRANTS Defendant's motion to dismiss with prejudice. The parties will be permitted to address the tentative ruling at the hearing that will be held at 1:30 p.m. on September 21, 2018. If Plaintiffs wish to submit on the

Court's tentative ruling, Plaintiffs' counsel shall inform the Court in advance of the hearing.

**Procedural Background**

The case was removed from state court on March 2, 2018. (Dkt. No. 1.) Plaintiff Javan Quinones, son of decedent Lizzeth Cabrera, and Plaintiff Alexandra Legy, a minor daughter of decedent Lizzeth Cabrera, appearing by and through her guardian ad litem Rosa Alicia Cabrera (collectively "Plaintiffs") filed a complaint for wrongful death/negligence and willful misconduct against Defendants Zurich American Insurance Company ("ZAIC"); Zurich North America; Esis, Inc.; and Esis Woodland Hills WC. (Dkt. No. 1, Compl.) ZAIC and Esis, Inc. are the only defendants who have appeared in the case to date. On May 1, 2018, by joint motion, Defendant ZAIC was dismissed with prejudice. (Dkt. Nos. 10, 12.) On July 10, 2018, the Court granted Defendant Esis' motion to dismiss with leave to amend. (Dkt. No. 23.) On July 17, 2019, Plaintiffs filed a first amended complaint ("FAC") alleging wrongful death/negligence, willful misconduct and intentional infliction of emotional distress against all the same Defendants, including ZAIC who had been previously dismissed with prejudice. (Dkt. No. 31.)

Defendant Esis filed a motion to dismiss the FAC arguing Plaintiffs failed to cure the deficiencies the Court noted in the dismissal order and that the claims are barred by the exclusivity provision of the Workers' Compensation Act ("WCA") and California Labor Code ("Labor Code") section 4610.3(a). (Dkt. No. 32.) As to the second cause of action for willful misconduct, Plaintiffs concede their allegations fail to support a claim for violation of California Labor Code section 4610.3(a). (Dkt. No. 34 at 11.[1]) Thus, the Court GRANTS Defendant's motion to dismiss the second cause of action for willful misconduct as unopposed.

---

[1] Page numbers are based on the CM/ECF pagination.

## Factual Background

Around June 5, 2007, Decedent Lizzeth Cabrera ("decedent" or "Lizzeth") sustained physical injuries and disabilities from her work activity as a sorter with National Beef Packing Co., LLC. (Dkt. No. 31, FAC ¶ 11.) She suffered injuries to her back, both shoulders and knee. (Id.) With legal counsel, Lizzeth filed a worker's compensation claim with the Worker's Compensation System and Appeals Board ("WCAB") in San Diego, CA. (Id. ¶ 12.) The matter was fully litigated within the WCAB. (Id.)

Lizzeth was diagnosed with major disc herniations, protrusions and bulges, foraminal stenosis and narrowing at multiple lumbar levels requiring surgeries. (Id. ¶ 13.) Around July 20, 2012, Lizzeth underwent a lumbar decompression and fusion of L3 through S1. (Id. ¶ 14.) Around November 6, 2013, she underwent anthroscopy and arthroscopic acromioplasty of the right shoulder in order to correct and alleviate her impingement syndrome. (Id. ¶ 15.)

Lizzeth's spinal condition did not improve, and over time she began having recurrent and persistent MRSA infections, abscesses and bed sores due to her continued and/or increased lack of mobility. (Id. ¶ 16.) This caused her great pain, stiffness and discomfort to her lumbar spine, radiating to her lower extremities, preventing her from becoming ambulatory. (Id.) She also fell approximately ten (10) times due to leg weakness. (Id.) Around April 8, 2016, Lizzeth's neurosurgeon requested authorization for surgery, hospitalization and treatment "including L2-3 interbody spinal fusion with an L2-S1 posterior spinal fusion and decompression, removal of previous hardware from L3-S1 and re-implantation of hardware at L2-S1; revision laminotomy and resection of bony hyperostosis at L3-S1; and exploration of fusions at L3-4." (Id. ¶ 17.) The Utilization Review "determination date" was April 15, 2016. (Id. ¶ 18.)

Around July 15, 2016, Defendants[2] notified Lizzeth's counsel that the requested medical treatment was certified and approved, including pre-operative diagnostics and treatment, hospitalization, spinal surgeries and aftercare and that "it met established criteria for medical necessity." (Id. ¶ 19.) Between July 15, 2016 and July 29, 2016, Defendants unilaterally cancelled the surgery scheduled for July 29, 2016 disputing the location of the surgery because they did not want to pay for transportation from Lizzeth's home in Brawley, CA to Los Angeles, CA the location of the surgery as it was not "within a reasonable geographic location." (Id. ¶¶ 20, 21.) Lizzeth's counsel agreed to cover the cost of the transportation to and from the surgery. (Id.) Around July 29, 2016, defense counsel wrote to Lizzeth's counsel confirming that she been certified for lumbar spine surgery, disputing that Los Angeles was "within a reasonable geographic location", not authorizing the surgery to be performed in Los Angeles and confirming the cancellation of the surgery. (Id. ¶ 21.) Around August 25, 2016, Lizzeth's counsel went to the WCAB and obtained a Stipulation and Order to schedule the surgery and a stipulation that "Defendant agrees to provide transportation for the Applicant from L.A. to her home in Brawley after the back surgery. Applicant to contact the transportation service (MTI) to make arrangements." (Id. ¶ 23.)

The surgery was scheduled for October 20, 2016. (Id. ¶ 24.) On or about October 17, 2016, Lizzeth passed away and the San Diego County Coroner stated the causes of death were respiratory failure, septic shock and polymicrobial sepsis. (Id. ¶ 25.) Plaintiffs allege that Defendants' unilateral rescission of the surgery and continued refusal to schedule the surgery, despite decedent's counsel's agreement to pay for the transportation despite Defendant's knowledge of her failing health is not a risk reasonably encompassed within the compensation bargain. (Id. ¶ 26.)

Plaintiffs claim that between July 15, 2016 to August 25, 2016, Defendants

---

[2] The Complaint references ZAIC and Esis collectively as "Defendants".

negligently, carelessly, recklessly and unlawfully cancelled a certified and approved medical treatment over a non-existent payment of transportation issue causing Lizzeth's counsel to obtain an order reinstituting the surgery and transportation payment, causing a nearly three (3) month delay in the surgery, which would have saved Lizzeth's life, and as a result, directly and legally causing the injuries and damages to Plaintiffs. (Id. ¶ 28.)

**Discussion**

**A.   Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).
/ / / /

## B. Wrongful Death/Negligence

In the court's prior order, it dismissed the wrongful death/negligence claim holding that "despite the tragic death of Lizzeth, the gravamen of Plaintiffs' causes of action for wrongful death . . . concern decisions relating to the form, location and timing of medical treatment that Lizzeth would receive" and are ones that involve a "risk reasonably encompassed within the compensation bargain." (Dkt. No. at 23 at 9.) Therefore, Esis' decision to cancel the surgery due to the costs of transportation falls within the exclusivity provision of the WCA and was thus barred. (Id.)

In its motion, Defendant argues that Plaintiffs have failed to correct the deficiencies the Court noted in its order and failed to allege in the FAC that Esis' motive in delaying treatment violated a fundamental public policy of the state. The Court agrees. The FAC does not allege any violation of a fundamental public policy of the state but they do in their opposition. In that opposition, Plaintiffs argue that the public policy behind workers' compensation, to provide an employee a relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault and in exchange, give up the wider range of damages potentially available in tort, was violated when Defendant failed to provide reasonably swift treatment and benefits to the decedent. (Dkt. No. 34 at 7.) For purposes of judicial efficiency, while not alleged in the FAC, the Court will consider Plaintiffs' argument that Defendants' actions violated the public policy behind the workers' compensation statute by failing to promptly provide swift treatment and benefits.

As discussed in the Court's prior order, California's WCA provides for the compensation of employees injured in the course and scope of their employment. Cal. Lab. Code § 3201. Workers' compensation is the "sole and exclusive remedy of the employee or his or her dependents against the employer." Cal. Lab. Code § 3602. The WCA defines "employer" to include "insurer." Cal. Lab. Code § 3850(b).

California courts follow a two-step analysis to determine whether an injury falls within the exclusivity provision. "The first step is to determine whether the injury is

6

18cv467-GPC(MDD)

'collateral to or derivative of' an injury compensable by the exclusive remedies of the WCA . . . ." Mosby v. Liberty Mutual Ins. Co., 110 Cal. App. 4th 995, 1003 (2003) (citation omitted)). "If the injury meets that test, and is thus a candidate for the exclusivity rule, the second step is to determine whether the 'alleged acts or motives that establish the elements of the cause of action fall outside the risks encompassed within the compensation bargain.'" Id.

In Vacanti, the California Supreme Court "limited" the exception to the exclusive remedy provisions holding that "the motive element of a cause of action excepts that cause of action from exclusivity *only if* it violates a fundamental policy of this state." Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund, 24 Cal. 4th 800, 823 (2001) (emphasis in original). The Vacanti plaintiffs alleged causes of action for, *inter alia*, abuse of process, fraud, and violation of the Cartwright Act based on the defendants' conduct in delaying or avoiding payment during the handling of the plaintiffs' lien claims. Id. at 809. The abuse of process claim accused the defendants of "frivolous objections, filing sham petitions and documents with the WCAB, issuing unnecessary subpoenas, and improperly threatening to depose plaintiffs' physicians". Meanwhile, the fraud claim alleged "false statements about and during its processing of plaintiffs' lien claims" concerned allegations of a bad faith practice of delaying or denying payments. Id. at 823. The court concluded that these claims essentially alleged a pattern or practice of delaying or denying payments in bad faith that were closely connected to a normal insurer activity-the processing and payment of medical lien claims. Id. As a result, the plaintiffs' abuse of process and fraud claims were encompassed within the compensation bargain and subject to the exclusivity provision of the WCA. Id.

While the plaintiffs' abuse of process and fraud claims were barred on exclusivity grounds, the court held the wrongful acts and motives that give rise to plaintiffs' Cartwright Act claim fell outside the compensation bargain. The Cartwright Act claim fell outside the exclusivity provision because a "concerted effort by insurers to interject themselves into lien claims they did not insure is not a normal part of the claims process." 24 Cal. 4th at

7

825. Moreover, relying on Speegle, the court also held that the motive element of a Cartwright Act cause of action, "a purpose to restrain trade", violates a fundamental public policy rooted in a statutory provision and falls within the exception to the exclusivity provision. Id. at 825 (citing Speegle v. Bd. of Fire Underwriters, 29 Cal. 2d 34, 44 (1946)). A Cartwright Act states a cause of action if the "defendants' *objective* [is] to stifle competition by enforcing a scheme to restrain trade." Speegle, 29 Cal. 2d at 41 (emphasis added). "The Cartwright Act merely articulates in greater detail a public policy against restraint of trade that has long been recognized at common law. Thus, under the common law of this state combinations entered into for the purpose of restraining competition and fixing prices are unlawful." Id. at 44.

In this case, Plaintiffs allege a wrongful death/negligence cause of action. In California, the "elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." Boeken v. Philip Morris USA, Inc., 48 Cal. 4th 788, 806 (2010) (quoting 5 Witkin, Cal. Procedure (5 ed. 2008) Pleading § 938, p. 352). Plaintiffs have not identified a motive element to wrongful death/negligence that violates a fundamental public policy. See Vacanti, 24 Cal. 4th at 823; see also Nelson v. American Casualty Co. of Reading Pa., No. CV 08-1943 SJO(Ex), 2008 WL 11338483, at *4 (C.D. Cal. June 2, 2008) (holding that the causes of action, including wrongful death, do not contain a motive element that violates a fundamental public policy of the state).

Finally, Plaintiffs argue that the public policy behind workers' compensation, to provide an employee a relatively swift and certain payment of benefits to address the effects of industrial injury without having to prove fault in exchange for giving up the wider range of damages potentially available in tort, was violated when Defendant failed to provide reasonably swift treatment and benefits to the decedent. However, the complained of violation falls squarely within the actions and risks encompassed within the compensation bargain. Accepting Plaintiffs' newly advanced theory would operate to nullify the

8

exclusivity provision of the WCA, would rewrite the compensation bargain, and greatly increase the costs to operate workers' compensation programs.

Ultimately, Plaintiffs have not demonstrated that the limited exception for public policy violations under <u>Vacanti</u> applies and their claim for wrongful death/negligence is barred because it falls within the exclusivity provision of the WCA. Accordingly, the Court tentatively GRANTS Defendant's motion to dismiss the wrongful death/negligence cause of action.

**C.     Intentional Infliction of Emotional Distress**

As to the intentional infliction of emotional distress claim ("IIED"), Defendant argues that the FAC fails to allege a motive element that violates a public policy of California. Plaintiffs respond that the IIED claim is not barred by the exclusivity provision because Defendant's conduct went beyond the normal role of an insurer.

"[A]n employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation" unless the employer's conduct (1) "contravenes fundamental public policy" or (2) "exceeds the risks inherent in the employment relationship." <u>Livitsanos v. Superior Ct.</u>, 2 Cal. 4th 744, 754 (1992) (citations omitted). In <u>Miklosy</u>, the California Supreme Court narrowed the <u>Livitsanos</u> exception for violating a fundamental public policy and held that a cause of action for intentional infliction of emotional distress falls within the exclusive province of workers' compensation and that the "exception [stated in <u>Livitsanos</u>] for conduct that 'contravenes fundamental public policy' is aimed at permitting a <u>Tameny</u>[3] [i.e., wrongful discharge] action to proceed despite the workers' compensation exclusive remedy rule." <u>Miklosy v. Regents of Univ. of California</u>, 44 Cal. 4th 876, 902-03 (2008).

California appellate courts and district courts have interpreted <u>Miklosy</u> as limiting the fundamental public policy to <u>Tameny</u> actions for IIED claims. See <u>Yau v. Santa Margarita Ford, Inc.</u>, 229 Cal. App. 4th at 144, 161–62 (2014) (noting <u>Miklosy</u> limited

---

[3] A <u>Tameny</u> action is a common law tort claim for wrongful discharge in violation of public policy. <u>Tameny v. Atlantic Richfield Co.</u>, 27 Cal.3d 167 (1980).

9

fundamental public policy exception to Tameny causes of action); Erhart v. Bofl Holding, Inc., 269 F. Supp. 3d 1059, 1081 (S.D. Cal. 2017) (intentional infliction of emotional distress subject to exclusive remedy rule as the exception for conduct that contravenes fundamental public policy does not apply to IIED claims); Saba v. Unisys Corp., 114 F. Supp. 3d 974, 984 (N.D. Cal. 2015) ("A public policy exception does not prevent the IIED claim from being barred by workers' compensation exclusivity."); Langevin v. Federal Exp. Corp., No. CV 14–08105 MMM (FFMx), 2015 WL 1006367, at *11-12 (C.D. Cal. Mar. 6, 2015) (fundamental public policy limited to "Tameny claims, not IIED claims"; therefore, the plaintiff may not assert an IIED claim against the individual defendants based on their purported violation of fundamental public policy because the exclusive remedy for such a claim is provided by the WCA).

In this case, Plaintiffs have not brought a Tameny claim or distinguished Miklosy. Instead, Plaintiffs cite to Hernandez v. Gen. Adjustment Bureau, 199 Cal. App. 3d 999, 1002-03 (1988) for the proposition that the FAC alleges facts sufficient to state a cause of action for IIED. In Hernandez, the court of appeals held that the complaint alleged a cause of action for IIED based on allegations that the independent claims adjuster intentionally delayed payments of approved benefits despite his knowledge of the appellant's susceptibility to profound mental distress and her repeated attempts at suicide, and knowledge that she was in dire need of timely payments because she was the sole support of her three children. Id. at 1007. As a threshold matter, the court found that the independent insurance adjuster was a third party and was not immunized by the exclusivity provisions of the WCA. The court held that the appellees were not subject to immunity under the WCA because they were not an "employer" under Labor Code sections 3850 and 3852, as they were an independent adjusting agent of the employers' insurer and not an insurer or the adjusting agent of a self-insured employer. Id. at 1004.

Here, the Plaintiffs have not engaged in the exclusivity analysis conducted by the Hernandez court. Further, Plaintiffs have not reconciled the holding in Hernandez with that in Marsh, 49 Cal. 3d at 7-8 where the California Supreme Court found that it was error

10

18cv467-GPC(MDD)

to focus solely on sections 3850 and 3852 in determining exclusivity. The court held that the exclusive remedy doctrine stems also from sections 5300 and 5814, which refer to the "recovery of compensation" and the "payment of compensation." Id. In addition, "these latter terms imply that the workers' compensation system encompasses all disputes over coverage and payment, whether they result from actions taken by the employer, by the employer's insurance carrier, or, as occurred in this case, by an independent claims administrator hired by the employer to handle the worker's claim." Id.; see also Phillips v. Crawford & Co., 202 Cal. App. 3d 383, 387-88 (1988) (noting that courts should focus on the carrrier's actions rather than the identity of the defendant). Hernandez conflicts with the holding in Marsh & McLennan and would vitiate the very purpose of the exclusive remedy provisions of the Act.

Here, the gravamen of Plaintiffs' complaint is the delay or discontinuance of benefits by Defendant's cancellation and delay of an approved medical treatment resulting in the death of the decedent. (Dkt. No. 31, FAC ¶ 60). These allegations of delay and discontinuance of benefits fall within the exclusive jurisdiction of the WCA. See Mitchell v. Scott Wetzel Servs., Inc., 227 Cal. App. 3d 1474, 1480-81 (1991) ("*payment* of benefits, the *enforcement* of the payment of benefits, the *discontinuance* of benefits, or rights *incidental* to the payment of benefits" fall within the exclusive jurisdiction within the WCA as provided in section 5300 and 5814 despite the "reprehensible" conduct of the claims administrator); Phillips, 202 Cal. App. 3d at 387 (the existence of a penalty provision indicates "a legislative intent that delayed payment be dealt with under the provision of the Act."); Santiago v. Employee Benefits Servs., 168 Cal. App. 3d 898, 901 (1985) ("The mere delay or failure to pay a workers' compensation award is not a basis for an independent lawsuit."). Therefore, Plaintiffs' allegation of extreme and outrageous conduct because of the delay or discontinuance of benefit falls within the jurisdiction of the WCAB. See Schlick v. Comco Mgmt., Inc., 196 Cal. App. 3d 974, 981 (1987) (emotional distress claim based on the defendant's withholding of payment with the intent to cause him emotional harm fell within the Board's jurisdiction as the claim was

encompassed within section 5300(a) concerning "the recovery of compensation."). Accordingly, the Court tentatively GRANTS Defendant Esis' motion to dismiss the claim for intentional infliction of emotional distress as barred by the exclusivity provision.

### D. Dismissal with Prejudice

In its motion, Defendant seeks dismissal with prejudice. In their opposition, Plaintiffs do not seek leave to amend. Plaintiffs had an opportunity to cure the deficient pleading and was unable to do so; therefore, the Court concludes any further amendments would be futile. Thus, the Court tentatively GRANTS Defendant's motion to dismiss with prejudice. See Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892-93 (9th Cir. 2010) (permitting denial of leave to amend if amendment would be futile).

### Conclusion

Based on the above, the Court tentatively GRANTS Defendant Esis Inc.'s motion to dismiss with prejudice. The Court notes that the claims as to ZAIC remain as well as claims against Zurich North America, and Esis Woodland Hills WC. The Court will entertain further arguments at the scheduled hearing on September 21, 2018

IT IS SO ORDERED.

Dated: September 20, 2018

Hon. Gonzalo P. Curiel
United States District Judge